## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## AUGUSTA DIVISION

| | |
|---|---|
| ALLISON C. KIRKLAND,<br><br>  Plaintiff,<br><br>vs.<br><br>QLS ENTERPRISE, LLC, doing business as Mr. Appliance of West Augusta, and QUENTIN SMITH,<br><br>  Defendants. | CIV. ACTION NO. __1:21-cv-133_____<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff Allison C. Kirkland, by and through the undersigned Counsel of Record, and hereby files this Complaint for Damages against Defendants QLS Enterprise, LLC, doing business as Mr. Appliance of West Augusta, and Quentin Smith, respectfully showing the Court as follows:

# I.  JURISDICTION AND VENUE

1.

Plaintiff brings the above-captioned case pursuant to 29 U.S.C. §§ 201, *et seq.,* the Fair Labor Standards Act of 1938, as amended, ("FLSA") for unpaid minimum, unpaid overtime wages, and retaliation, as well as the laws of the State of Georgia for intentional infliction of emotional distress, as well as negligent retention and supervision.

2.

The United States District Court for the Southern District of Georgia ("Court") is vested with original jurisdiction pursuant to 28 U.S.C. § 1331 because the above-captioned complaint involves the laws of the United States and with supplemental jurisdiction pursuant to 28 U.S.C. § 1367 because the State law claim(s) arise from the same nucleus of operative facts as the Federal law claims.

3.

Venue is proper pursuant to 28 U.S.C. § 1391 because Defendants reside and/or maintain a place of business in the Southern District of Georgia, Augusta Division, and the unlawful conduct forming the basis of the above-captioned complaint occurred in the Southern District of Georgia, Augusta Division.

## II.  PARTIES

4.

Plaintiff Allison C. Kirkland ("Kirkland") is a thirty-six (36) year old female, who is a United States citizen, a Georgia resident, subject to this Court's jurisdiction, and entitled to bring the claims asserted in the above-captioned case.

5.

At all relevant times, Kirkland was an "employee" of Defendant QLS Enterprise, LLC, doing business as Mr. Appliance of West Augusta, within the meaning of, among other laws, the FLSA, 29 U.S.C. § 203.

6.

During the course of employment with Defendant QLS Enterprise, LLC, doing business as Mr. Appliance of West Augusta, Kirkland was engaged in commerce.

7.

Defendant QLS Enterprise, LLC, doing business as Mr. Appliance of West Augusta, ("QLS Enterprise") is a Georgia limited liability company providing residential and commercial appliance repair services through a franchise system with locations in the United States and Canada affecting inter-State commerce through its facilities in Georgia and subject to the Court's jurisdiction with a principal office located in Augusta, Georgia.

8.

QLS Enterprise operates a facility located at 2917 Riverwest Drive, Augusta, Georgia 30907 ("West Augusta Location"), where the conduct forming the basis of the above-captioned complaint occurred.

9.

QLS Enterprise is an "employer" with the meaning of, among other laws, the FLSA, 29 U.S.C. § 203, with more than twenty (20) employees for each working day in each of the twenty (20) or more calendar weeks in the current or preceding calendar year while engaging in inter-State commerce.

10.

During the course of Kirkland's employment, QLS Enterprise was engaged in commerce.

11.

QLS Enterprise may be served with process through its Registered Agent located at 2917 Riverwest Drive, Suite 202, Augusta, Georgia, 30907.

12.

Defendant Quentin Smith ("Smith") is and was, at all relevant times, a citizen of the United States, resident of the State of Georgia, and subject to the jurisdiction of this Court.

13.

Smith was, at all relevant times, the owner and operator of QLS Enterprises, involved in the day-to-day operation of the business, and regularly exercised authority to:  (a) hire and terminate employees, (b) determine the schedules and assignments for employees, (c) supervise employees, and (d) otherwise control operation of QLS Enterprises.

14.

At all relevant times, Smith supervised Kirkland while participating in the unlawful conduct described herein.

15.

Smith may be served with process at the West Augusta Location located at 2917 Riverwest Drive, Augusta, Georgia 30907.

### III.  FACTUAL ALLEGATIONS

16.

QLS Enterprise is engaged in commerce and in the business of providing residential and commercial appliance repair services through a franchise system with locations throughout Canada and the United States, including, but not limited to, the West Augusta Location.

17.

Smith owns and operates QLS Enterprises through the West Augusta Location.

18.

On or about March 15, 2021, Kirkland began working for QLS Enterprise as an Office Manager earning $15.00 per hour.

19.

As an Office Manager, Kirkland was engaged in commerce and responsible for, among other duties, scheduling technicians, performing client intakes, answering telephones, providing customer service, ensuring technicians possessed parts needed for repair services, organizing the office, as well as other duties and tasks assigned by management.

20.

During the course of employment with QLS Enterprises, Kirkland diligently and professionally performed all duties and assigned tasks.

21.

While employed by Commercial Furniture, Kirkland's work schedule varied depending on the needs of QLS Enterprises and customers.  Generally, Kirkland worked up to (and in excess of) sixty (60) hours per workweek.  In addition to performing tasks at the West Augusta Location during normal business hours, Smith required Kirkland to work remotely from home.  To that end, Smith purchased a computer for Kirkland and provided Kirkland with a duty-phone, to which QLS Enterprise's phones were transferred after business hours.  Essentially, Kirkland worked at the West Augusta Location during normal business hours, constantly worked remotely at the behest of Smith, and was on 24-hour call.

22.

During the course of Kirkland's employment, QLS Enterprises did not utilize timesheets or an electronic time-tracking system.

23.

Although Kirkland often individually worked up to (and exceeding) sixty (60) hours in each work week as an Office Manager, QLS Enterprises refused to pay Kirkland minimum, let alone the FLSA-mandated rate, for any hours worked over forty (40) in a given workweek.

24.

Because QLS Enterprises failed and refused to compensate at the FLSA-mandated rates for hours in excess of forty (40) in workweeks, Kirkland repeatedly complained to QLS Enterprises employees about unpaid minimum and overtime wages.  When Kirkland complained to Hailey Phillips ("Phillips"), Kirkland's predecessor, Hailey simply responded, "Get used to it" because there were "not enough hours in the work day to handle the call volume."  Similarly, when Kirkland complained to Tressi Richardson ("Richardson"), QLS Enterprises Office Supervisor, Richardson responded that Smith will not pay for anything above forty (40) hours per workweek.  Despite Kirkland's constant complaints, Smith expected

and pressured Kirkland to work after-hours "to get the work done" or else Smith would terminate Kirkland's employment.

25.

After Kirkland professionally complained about unpaid overtime wages, Defendants subjected Kirkland to a retaliatory campaign. For example, Defendants poorly trained and refused to provide professional assistance to Kirkland. When Phillips purposely double-ordered several parts before leaving QLS Enterprises, Smith blamed, yelled at, and verbally berated Kirkland. Often, Smith called Kirkland stupid and other demeaning names in the presence of co-workers. Similarly, when a deposit did not post on a particular day, Smith demanded that Kirkland address the issue after 6:00PM, when Smith knew the bank was closed. Moreover, Smith commanded that Kirkland organize the West Augusta Location's inventory in three (3) days despite the fact that the recently-hired Inventory Specialist stated that the project required at least six (6) months. Similarly, when the West August Location experienced an issue related to a computer software failure, Smith blamed Kirkland, who was neither a software specialist nor tasked with maintaining the computer system. Simply put, following Kirkland's complaints about unpaid overtime wages, Smith constantly yelled at, berated, and harassed Kirkland while creating a hostile work environment.

26.

Similarly, although QLS Enterprises employed an Inventory Specialist, Smith reassigned, as punishment, certain manual labor tasks outside the Office Manager position to Kirkland.  For example, or about June 27, 2021, Kirkland was tasked with heavy appliance parts.  While lifting a heavy box, Kirkland suffered a severe fractured hand, requiring medical treatment, an x-ray, and a soft cast.  Since that time, Kirkland has been unable to properly utilize the left side of Kirkland's body.

27.

About a week after the hand injury, Kirkland filed a claim, related to the fractured hand, with the State Board of Workers' Compensation.  After Smith advised Richardson of the complaint, Richardson stated that Smith was angry because Kirkland filed the Workers' Compensation claim.  Like before, Smith threatened to terminate Kirkland's employment.

28.

In addition to the lack of professional support, harassment, and reassignment of the manual labor tasks, on or about July 13, 2021, QLS Enterprises terminated Kirkland's employment.  During the termination call, Richardson stated that QLS Enterprises was terminating employment because Smith "doesn't trust [Kirkland's] work performance with the company."  However, Richardson then stated that

Kirkland was an "excellent employee" and that Richardson "had no issues with [Kirkland] at all in [Kirkland's] work at all."  Moreover, Richardson stated, "[Kirkland] made the company better honestly, in my opinion" and "[Kirkland was] steering the company to the, you know, a good direction . . . ."

29.

While Kirkland worked as an Office Manager from March until July 2021, Defendants required, and was aware that, Kirkland worked up to (and exceeding) sixty (60) hours per workweek.

30.

Despite requiring Kirkland to work overtime without additional compensation, QLS Enterprises did not advise Kirkland that overtime had to be approved or instruct Kirkland to keep track of hours.

31.

Rather than compensate Kirkland for hours worked or at the FLSA-mandated rate for hours worked in excess of forty (40) hours in each workweek, QLS Enterprises merely compensated Kirkland for forty (40) hours at Kirkland's regular straight-time rate of $15.00 per hour.

32.

In addition to the failure to pay FLSA-mandated minimum and overtime wages, QLS Enterprises harassed and treated Kirkland unfairly in several ways, including, but not limited to, failing to provide professional assistance, frequently blaming and berating Kirkland, forcing Kirkland to engage in manual labor tasks resulting in a severe physical injury, and ultimately terminating employment despite diligent and competent professional performance.

33.

QLS Enterprises' failure to properly compensate Kirkland at the FLSA-mandated minimum and overtime rates was knowing and willful.

## IV.  CLAIMS FOR RELIEF

### COUNT I:
### FAILURE TO PAY MINIMUM AND OVERTIME WAGES
### IN VIOLATION OF THE FLSA
**(Against Defendant QLS Enterprises)**

34.

The FLSA requires that employers pay employees a minimum wage, plus any expenses employees incur for the benefit of employers, and that, with certain exceptions inapplicable to this case, that employers pay their employees time and a half for hours an employee works in excess of a 40-hour workweek.

35.

During the relevant period, Kirkland was an employee and QLS Enterprises was an employer (both engaged in commerce) within the meaning of the FLSA.

36.

Similarly, during the relevant period, the relationship between Kirkland and QLS Enterprises was an employer-employee relationship within the meaning of the FLSA, such that a cause of action exists based upon the failure to pay minimum and over time wages at FLSA-mandated rates for hours worked in excess of forty (40) hours during workweeks.

37.

During the relevant time period, Kirkland regularly worked more than forty (40) hours per workweek while employed by QLS Enterprises and, therefore, Kirkland was entitled to be paid minimum and one-and one-half times the regular rate of pay for all hours worked over forty (40) hours in the applicable workweeks.

38.

However, during the course of employment, QLS Enterprises failed to compensate Kirkland any hours worked in excess of forty (40) hours per workweek and failed to compensate Kirkland at the FLSA-mandated rate for hours worked in excess of forty (40) hours per workweek.

39.

Regardless of the hours worked in a workweek, QLS Enterprises merely paid Kirkland $15.00 per hour for the first forty (40) hours worked.

40.

QLS Enterprises repeatedly failed to pay Kirkland minimum or overtime wages for hours Kirkland worked in violation of the FLSA.

41.

QLS Enterprises knew, or showed reckless disregard for the fact, that QLS Enterprises failed to pay Kirkland overtime compensation in violation of the FLSA.

42.

QLS Enterprises' actions, policies, and/or practices described herein violate the FLSA by regularly and repeatedly failing to compensate Kirkland at the FLSA-mandated minimum and overtime rates.

43.

Under any interpretation of the terms and/or provisions, QLS Enterprises' conduct in violation of the FLSA was both willful and in bad faith.

44.

As the direct and proximate result of QLS Enterprises' intentional, willful, and unlawful conduct when refusing to pay Kirkland minimum and overtime compensation for the overtime hours worked, Kirkland has suffered loss of income and other damages.

45.

Pursuant to the FLSA, Kirkland is entitled to unpaid minimum and overtime wages, liquidated damages, and reasonable attorneys' fees, and costs incurred in connection with this claim.

**COUNT II**
**RETALIATION**
**IN VIOLATION OF THE FLSA**
**(Against Defendant QLS Enterprises)**

46.

The FLSA prohibits employers from retaliating against employees who oppose an employment practice prohibited by, or exercises or attempts to exercise rights under, the FLSA.

47.

During the relevant period, Kirkland was an employee and QLS Enterprises was an employer (both engaged in commerce) within the meaning of the FLSA.

48.

During the relevant period, the relationship between Kirkland and QLS Enterprises was an employer-employee relationship within the meaning of the FLSA, such that a cause of action exists where retaliation on the basis of opposing and/or reporting unlawful employment practices is alleged to be the causative agent of adverse employment actions directed to Kirkland by Defendants.

49.

QLS Enterprises unlawfully and knowingly failed to pay the FLSA-mandated minimum and overtime wages to Kirkland for hours worked in excess of forty (40) hours during certain workweeks.

50.

Kirkland repeatedly complained to QLS Enterprises employees, including, but not limited to, Phillips, Richardson, and Smith, about unlawful employment practices in violation of the FLSA.

51.

Following Kirkland's complaints concerning unlawful employment practices, Defendants took adverse employment actions against Kirkland, including, but not limited to, failing to provide professional assistance, yelling at and berating Kirkland, forcing Kirkland to work without compensation, assigning manual labor tasks resulting in severe physical injury, and terminating employment without cause in violation of, *inter alia*, the FLSA.

52.

The effect of Defendants' actions has been to suspend and deprive Kirkland of an employment position, as well as loss income in the form of wages, prospective retirement benefits, social security, and other benefits because of the exercise of Kirkland's Federally-protected rights

53.

Defendants' adverse employment actions against Kirkland constitute unlawful retaliation in violation of, *inter alia*, the FLSA.

54.

Defendants' retaliatory actions were willful, deliberate, and intended to cause Kirkland harm and/or were committed with reckless and wanton disregard of the harm caused to Kirkland in derogation of Kirkland's Federally-protected rights.

55.

Defendants' discriminatory and retaliatory actions were undertaken in bad faith.

56.

The retaliation to which Kirkland was subjected by Defendants entitles Kirkland to all appropriate relief afforded under the law.

57.

As a result of Defendants' intentional and unlawful conduct, Kirkland has suffered lost compensation and other benefits of employment, physical and emotional distress, inconvenience, humiliation, damage to reputation, other indignities, as well as past and future pecuniary losses.

58.

Defendants' actions with respect to Kirkland has demonstrated willful misconduct, malice, fraud, wantonness, oppression, and a complete want of care and, thus, Kirkland is entitled to an award of punitive damages to deter, punish, and penalize Defendants for and from similar future conduct.

## COUNT III:
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## IN VIOLATION OF THE LAWS OF THE STATE OF GEORGIA
### (Against All Defendants)

59.

Defendants' statements, conduct, and behavior towards Kirkland were intentional and reckless, extreme and outrageous, causing Kirkland severe shame, humiliation, embarrassment, and emotional distress of a nature that no person should endure.

60.

Defendants' statements, conduct, and behavior towards Kirkland demonstrate, among other things, a "retaliatory animus."

61.

At all relevant times, the Parties had a special, employer-employee relationship, wherein Defendants had control over Kirkland, as well as Kirkland's income and/or livelihood during a global pandemic.

62.

When engaging in the intentional, reckless, extreme, and outrageous conduct towards Kirkland, Defendants knew that Kirkland was dependent upon the income received from QLS Enterprises.

63.

Without cause or justification, Defendants repeatedly yelled and berated Kirkland, refused to provide Kirkland with necessary professional assistance, demanded that Kirkland complete tasks and assignments in an unreasonable timeframe and without compensation, forced Kirkland to complete duties and assignments after normal business hours, required Kirkland to perform manual labor tasks outside of Kirkland's position which resulted in a severe physical injury, terminated employment when Kirkland opposed unlawful employment practices, and engaged in other unfair and unlawful treatment.

64.

Defendants knew or should have known that such conduct would result in the severe emotional distress suffered by Kirkland.

65.

As a result of Defendants' conduct, Kirkland has and will continue to suffer severe emotional distress and other damages for which Kirkland is entitled to recover.

## COUNT IV
## NEGLIGENT RETENTION, TRAINING, AND SUPERVISION
## IN VIOLATION OF THE LAW OF THE STATE OF GEORGIA
### (Against Defendant QLS Enterprises)

66.

As a result of the actions taken by Defendants, Kirkland suffered, among other things, unpaid wages, retaliation, and severe emotional distress.

67.

QLS Enterprises owed Kirkland a duty to hire, retain, train, and supervise employees who would lawfully conduct themselves and not engage in unlawful or tortious conduct.

68.

By negligently hiring, training, retaining, and supervising its employees, including, but not limited to, Smith, QLS Enterprises breached their duty to hire, train, retain, and supervise employees who would lawfully behave.

69.

QLS Enterprises knew or, in the exercise of ordinary diligence, should have known of the propensity of its employees, including Smith, to engage in unlawful conduct against Kirkland.

70.

By failing to engage in any corrective or remedial action, QLS Enterprises ratified, condoned, and/or adopted its employees' unlawful conduct.

71.

As a direct and proximate result of QLS Enterprises' negligent hiring, training, retention, and supervision of its employees, as well as the failure to take any remedial or corrective action with respect to the known unlawful actions taken by employees, including Smith, Kirkland suffered damages.

72.

QLS Enterprises' negligent conduct entitles Kirkland to compensatory damages, punitive damages, as well as any and all other remedies available under the law.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully demands a trial by jury and request the following relief:

(a)    That the Clerk of the Court issue summons and original process, served upon Defendants and any other person or entity the Court deems necessary in accordance with the law;

(b)     That the Court grant declaratory judgment that Plaintiff's rights under, among other laws, the FLSA were violated;

(c)     That the Court award Plaintiff compensatory damages for all injuries suffered as a result of Defendants' unlawful conduct;

(d)     That the Court award back pay, including, but not limited to, unpaid back wages, lost income, bonuses, incentive compensation, pension, social security, and other benefits in amounts to be shown at trial;

(e)     That the Court award liquidated damages equal to back pay and lost benefits based upon Defendants' willful violations of the FLSA;

(g)     That the Court award punitive damages in an amount reasonable and commensurate with the harm done and calculated to be sufficient to deter such future conduct;

(h)     That the Court award pre-judgment interest on any monetary award;

(i)     That the Court grant a trial by jury as to all triable issues of fact; and

(j)     Further and additional relief as may be just and appropriate.

*[SIGNATURE ON THE FOLLOWING PAGE]*

Respectfully submitted, this 1st day of September, 2021.

MOLDEN & ASSOCIATES

REGINA S. MOLDEN
Georgia Bar No. 515454
T. ORLANDO PEARSON
Georgia Bar No. 180406
Peachtree Center – Harris Tower, Suite 1245
233 Peachtree Street, NE
Atlanta, Georgia 30303
(404) 324-4500
(404) 324-4501 (facsimile)
Email:  rmolden@moldenlaw.com
Email:  topearson@moldenlaw.com

*Counsel for Plaintiff Allison C. Kirkland*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION**

ALLISON C. KIRKLAND,

            Plaintiff,

       vs.                      CIV. ACTION NO._____

QLS ENTERPRISE, LLC, doing
business as Mr. Appliance of West    **JURY TRIAL DEMANDED**
Augusta, and QUENTIN SMITH,

           Defendants.

## LOCAL RULE AND SERVICE CERTIFICATION

The undersigned counsel certifies that this document has been prepared in accordance with the Local Rules and that the foregoing Complaint for Damages has been filed with the Clerk using the CM/ECF system which will notify the attorney(s) of record.

Respectfully submitted, this 1st day of September, 2021.

MOLDEN & ASSOCIATES

_____
T. ORLANDO PEARSON
Georgia Bar No. 180406